NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NILESH KEDIA, | : | |
| Plaintiff, | : | Civ. No. 06-6054 (GEB) |
| v. | : | MEMORANDUM OPINION |
| ALAN JAMAL and VINIT KESHARI, | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon defendants Alan Jamal and Vinit Keshari's ("Defendants") Motion for Reconsideration of the Court's April 25, 2007, Opinion and Order. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will deny Defendants' motion.

**I.   BACKGROUND**

The factual background of this action is discussed at length in the April 25th Opinion at 1-4. In that Opinion, the Court denied Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue to the United States District Court for the District of Massachusetts pursuant to

1

the first-filed rule. On May 9, 2007, Defendants filed the pending motion. Briefing on the matter now complete, the Court will address the pending motion.

## II.   DISCUSSION

### A.   First-Filed Rule

#### 1.   The Parties' Arguments

Defendants argue that the Court overlooked controlling law that establishes that the first-filed rule applies in this case. (Reconsideration Brief at 1). They cite to five cases that the Court has allegedly overlooked, not a single one of which was mentioned in the parties' moving papers. *Id.* at 3-4. The cases include: *In Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 189 F.2d 31 (3d Cir. 1951), *aff'd by* 342 U.S. 180 (1952); *American Telephone & Telegraph Co. v. MCI Communications Corp.*, 736 F. Supp. 1294 (D.N.J. 1990); *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, 2005 U.S. Dist. LEXIS 40007 (D.N.J. May 10, 2005); *Advanta Corp. v. Advanta Nat'l Bank U.S.A.*, 1997 U.S. Dist. LEXIS 2007, (E.D. Pa. February 19, 1997); *Hanover Fire & Casualty Insurance Co. v. Edwin Sieron*, 2007 U.S. Dist. LEXIS 1901 (E.D. Pa. January 10, 2007). Defendants argue that these support the proposition that the presence of Keshari in the New Jersey but not the Massachusetts action does not prevent the application of the first-filed rule. *Id.* Defendants also for the first time offer evidence and arguments proving that the Massachusetts court has personal jurisdiction over Keshari. *Id.* at 11-13. The evidence includes an affidavit from Keshari, wherein he consents to the jurisdiction of the Massachusetts court. (Reconsideration Brief Ex. B ¶ 8 (Kesahri Aff.)).

Nilesh Kedia argues that the Court correctly declined to apply the first-filed rule and that

the standard governing motions for reconsideration strongly counsels against considering evidence and arguments that could have been raised in the moving papers but were not. (Opposition to Motion for Reconsideration at 4-7 & 9-11). Therefore, according to Kedia, the Court should decline to consider arguments concerning the Massachusetts court's jurisdiction over Keshari. *Id.* at 9-11.

### 2. Standard of Review

Motions for reconsideration are governed by Local Civil Rule 7.1(i). These motions can succeed only upon a showing that either (1) the court overlooked "dispositive factual matters or controlling decisions of law" that were presented in the moving papers and "might reasonably have resulted in a different conclusion by the court," *United States v. Compaction Systems Corp.*, 88 F. Supp. 2d 339, 345-46 (D.N.J. 1999); (2) an intervening change in controlling law has occurred, *Electric Mobility Corp. v. Bourns Sensors/Controls*, 87 F. Supp. 2d 394, 401 (D.N.J. 2000); or (3) evidence not previously available has become available, *Database America, Inc. v. Bellsouth Advertising & Publishing Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993) .

Generally, the moving party is not entitled to raise new arguments that could have been addressed in the original moving and responsive papers. *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) ("Not only are such motions not a substitute for the appellate process, such motions are *not* an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers"); *NL Industries Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment.").

The term "overlooked matters" refers only to facts and legal arguments properly presented to the court in the moving papers, and not to matters presented for the first time in the motion for reconsideration. *Polizzi Meats, Inc. v. Aetna Life & Casualty Co.*, 931 F. Supp. 328 , 339 (D.N.J. 1996) ("[Rule 7.1(i)] explicitly invites counsel to draw the court's attention to decisions which may have been overlooked by the court, not those which were overlooked by counsel."). "A motion for reconsideration is improper when it is used 'to ask the Court to rethink what it had already thought through–rightly or wrongly.'" *Oritani S & L v. Fidelity & Deposit*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (quoting *Above the Belt v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)); *see also Koch Materials Co. v. Shore Slurry Seal, Inc.*, 209 F. Supp. 2d 418, 420 (D.N.J. 2002) (declining to consider new argument on motion for reconsideration and noting, "[the defendant] must bear the burden of its own omissions. Otherwise, litigants, who too often will desire to delay, to increase the expense of litigation for their opposition, or simply to economize on their own research costs, will not have sufficient incentive to consolidate all the pertinent facts and law together in one . . . motion.").

In limited circumstances, Rule 7.1(i) is subject to relaxation by the court. *See, e.g., Panna v. Firstrust Sav. Bank*, 760 F. Supp. 432, 435 (D.N.J. 1991) ("There is nothing to prevent the court from examining new facts or evidence that might lead to a different result if considered by the court."); *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 460-461 (D.N.J. 1998) (agreeing to consider new argument, but warning "other Courts might not be so lenient, and [plaintiff] should be more cautious when designing and writing its briefs."); *Union Steel America Co. v. M/V Sanko Spruce*, 1998 U.S. Dist. LEXIS 18021, at *5 (D.N.J. 1998) (agreeing to consider new case law because the "Court's consideration of the issue *sub judice*

was to some degree *sua sponte*, since defendants now cite additional pertinent authorities, and in light of the specter of litigation in two countries with its attendant expense and risk of inconsistent results, this Court has given the issues presented at this stage of the case another searching review.").

However, some judges have refused to relax Rule 7.1(i), particularly when the moving party sought to introduce evidence for the first time that was available at the time the court entered its original decision. *See e.g., Resorts Int'l v. Greate Bay Hotel and Casino*, 830 F. Supp. 826, 831& n.3 (D.N.J. 1992). The *Resorts International* court disagreed with *Panna,* holding:

> it is well established in this district that a motion for reconsideration is an extremely limited procedural vehicle. . . . We feel that [the position taken in *Panna*] is without foundation, either in the language of Rule [7.1(i)] itself or in the vast majority of the interpretive cases of this court. We are in fact bound *not* to consider such new materials, lest the strictures of our reconsideration rule erode entirely. [*Id*].

### 3.     The Court will not Reconsider Decision not to Apply First-Filed Rule

The Court could not have "overlooked" the cases Defendants cite to in their Motion for Reconsideration within the meaning of Rule 7.1(i) because the parties did not mention these in their moving papers. Further, the cases were not controlling law at the time the Court entered its decision because Defendants failed to establish that identity of the parties could be created in Massachusetts action.

In the aforementioned cases, courts used their discretion to apply the first-filed rule despite a lack of identity of the parties or issues because identity could be created by means of a counterclaim, amended pleading, intervention or joinder. *See, e.g., Hanover Fire & Casualty*

*Insurance Co.*, 2007 U.S. Dist. LEXIS 1901, at * 17 (applying first-filed rule because additional parties in second-filed action filed affidavits consenting to jurisdiction of the transferee court and Hanover's claims against Sieron and additional entities could be asserted in transferee court as counterclaims); *Advanta Corp.*, 1997 U.S. Dist. LEXIS 2007, * at 6-7 (applying first-filed rule even though second-filed action contained additional party and involved different issues because identity in transferee court could be achieved through counterclaim. Opinion did not mention personal jurisdiction issues with respect to additional party); *American Telephone & Telegraph Co.*, 736 F. Supp. at 1305-1313 (transferring second-filed action pursuant to Section 1404(a) after establishing that transferee court had personal jurisdiction over additional party).

Similarly, in *Kerotest Manufacturing Co.*, the Third Circuit Court of Appeals stayed the prosecution of a Delaware action involving two parties, Kerotest Manufacturing Corporation ("Kerotest") and C-O-Two Fire Equipment Corporation, in favor of a first-filed Illinois action involving C-O-Two as the plaintiff, Acme Equipment Company, Inc., as the defendant and Kerotest as the subsequently joined co-defendant. 189 F.2d at 32. The court based its decision on the fact that the Illinois court had jurisdiction over all of the relevant parties and was likely to resolve all issues pending in both actions, whereas the Delaware court did not have personal jurisdiction over Acme and was unable to resolve all outstanding issues. *Id.* at 34. In affirming the Third Circuit's decision, the Supreme Court held that the stay was proper because Kerotest was properly joined as a co-defendant in the Illinois action. 342 U.S. at 185-86. The Supreme Court noted that if Kerotest could not have been joined, the court should have permitted both actions to proceed simultaneously. *Id.*

The fifth case, *Glaxosmithkline Consumer Healthcare, L.P.*, 2005 U.S. Dist. LEXIS

40007 at *23, is distinguishable from the present action because it involved two actions that included the same parties but different issues. The court relied on Fifth Circuit precedent in stating that, "there is no requirement that the issues or the parties be identical." *Id.* at *25.

By contrast, this Court could not have applied the first-filed rule because it was unclear whether identity of the parties could be created in the Massachusetts action. Defendants failed to establish that the Massachusetts court has personal jurisdiction over Keshari, despite the fact that Kedia raised this issue in his Brief in Opposition to Defendants' Motion to Dismiss. April 25th Opinion at 8. Had the Court transferred this action without knowing whether Massachusetts has personal jurisdiction over Keshari, it would have risked depriving Kedia of the ability to pursue his claims against Keshari.

The Court will not exercise its discretion to consider the new cases in light of the new evidence concerning the Massachusetts court's personal jurisdiction over Keshari. This evidence should have been included in the defendants' moving papers. Defendants have proffered no excuse for failing to include it and no good reason for the Court to disregard the strong policy against considering evidence raised for the first time in a motion for reconsideration. The Court will not reconsider its decision not to dismiss or transfer this action pursuant to the first-filed rule.

    **B.**    **Transfer Pursuant to Section 1404(a)**

        **1.**    **The Parties' Arguments**

Defendants argue that the Court erred by not considering whether to transfer Kedia's claims against Jamal pursuant to 28 U.S.C. §1404(a). (Reconsideration Brief at 8). Although the

defendants did not address severing Kedia's claims in their moving papers or specifically request transfer pursuant to Section 1404(a), they argue that in asserting that this action should be transferred pursuant to the first-filed rule, they addressed some factors courts consider in a Section 1404(a) analysis. *Id* at 8-10; *see also* (Brief in Support of Motion to Dismiss at 7-8); (Reply in Support of Motion to Dismiss at 5-6). According to Defendants, by not considering whether to sever the present action the Court overlooked these arguments. *Id*.

Kedia argues that the Court properly declined to server his claims because that would have forced him to prosecute the defamation case against Keshari in New Jersey, while simultaneously prosecuting the same case against Jamal in Massachusetts. (Opposition to Motion for Reconsideration at 8). Such a ruling would be contrary to one of Section 1404(a)'s core aims–the avoidance of inconsistent judgments. *Id.* Also, Kedia argues that Defendants have failed to meet their burden of establishing that transfer pursuant to Section 1404(a) is warranted because they have not addressed all of the private and public interest factors involved in a Section 1404(a) analysis. *Id.* at 11. He argues that the balance of private and public interest factors weigh against a transfer. *Id.*

### 2. The Court will not Reconsider Decision not to Transfer

The Court did not err within the meaning of Rule 7.1(i) by not severing Kedia's claims. The Court did not address this possibility because the parties never raised it in their moving papers. Defendants' general allegations that various public interest factors favored a transfer of this entire action were not sufficient to indicate to the Court that Defendants wanted to sever Kedia's claims. Further, the Court could not have conducted a Section 1404(a) analysis with

respect to Jamal only, because Defendants failed to address all of Section 1404(a)'s private and public interest factors. Therefore, the Court did not overlook arguments regarding severing Kedia's claims.

Additionally, the Court properly utilized its discretion in declining to transfer. *See, e.g., LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 587 (D.N.J. 2001) (decision to transfer is within court's discretion); *SportsMEDIA Technology Corp. v. Upchurch*, 839 F. Supp. 8, 9-10 (D. Del. 1993) ("district courts are vested with broad discretion in deciding whether to transfer a case to another district."). The Court agrees with Kedia's argument that severing this action could result in inconsistent judgments, and, thus, be contrary to Section 1404(a)'s core aims.[1]

---

[1] The Court has considered the parties' arguments concerning the similarity of the claims involved in the present action and the Massachusetts action. The Court concludes that while these substantially overlap, allowing the claims to proceed in different courts is not likely to result in inconsistent judgments. First, the causes of action are distinct: the causes of action at issue in the present action are defamation and business disparagement, Complaint ¶¶ 21-30, whereas the cause of action at issue in Massachusetts is tortious interference with economic advantage, Counterclaim ¶¶ 79-83.

Second, the defamation and business disparagement claims are strictly based on the August 5, 2006, electronic email message that Keshari and Jamal allegedly circulated to SoftwareArt Corporation's ("SoftwareArt") employees, ex-employees and subcontractors, stating that Kedia defrauded and embezzled from SoftwareArt and that he lied to everyone. April 25th Opinion at 3-4. The tortious interference with economic advantage claim states that it is based on the following actions allegedly committed by Jamal and SoftwareArt:

> [R]e-routing Bramha business prospects to SoftwareArt and/or Maxima, diverting Bramha consultants to work for SoftwareArt and/or Maxima clients on SoftwareArt and/or Maxima projects, using Bramha funds for SoftwareArt and/or Maxima expenses, raiding Bramha and luring the Bramha consultants to work for SoftwareArt and/or Maxima, using Bramha moneys to pay for SoftwareArt and/or Maxima expenses, wrongfully withholding monies due to Bramha from certain clients . . .. [Counterclaim ¶ 82].

While these claims do not appear to overlap, Kedia has alleged in the Massachusetts action that Jamal and his agents have made misrepresentations about him. These misrepresentations were allegedly made before the August 5th electronic mail. Specifically, the section of the Counterclaim titled "Background" states: "Since this litigation began, Jamal and/or other agents or employees of SoftwareArt have been misinforming Bramha consultants that . . . Kedia was fired from SoftwareArt for 'malpractice.'" Counterclaim ¶ 53. Also, on April 5, 2006, Kedia's attorney wrote a letter to to Keshari, accusing him of "engaging in a series of communications with Bramha employees in an effort to disparage Bramha." (Reply in Support of Motion to Dismiss at 2). Kedia also stated in a response to an interrogatory in the Massachusetts action that "since this litigation began, Jamal and /or other agents or employees of SoftwareArt have been misinforming Bramha consultants that: Kedia was fired from SoftwareArt for

### III. CONCLUSION

For these reasons, Defendants' Motion for Reconsideration is hereby denied.  An appropriate form of order is filed herewith.


Dated:  July 5, 2007


                                                                s/ Garrett E. Brown, Jr.
                                                    GARRETT E. BROWN, JR., U.S.D.J.

---

'malpractice' . . .. Thus, as a result of the Plaintiffs' tortious interference with the economic advantage of Bramha and Kedia, Bramha and Kedia have been damaged."  (Brief in Support of Motion to Dismiss at 5-6).  While these alleged  misrepresentations may play a role in the Massachusetts action in determining  whether Jamal and/or his employees harmed Bramha, these are separate from the misrepresentations involved in the present action and do not comprise a defamation or business disparagement claim.

        Third, while there is some overlap in the damages sought in both actions, these are primarily distinguishable.  In the present action, Kedia seeks general and specific damages for the harm caused by the electronic mail to his personal and professional reputations, as well as to Bramha's business reputation, whereas in the Massachusetts action he seeks damages for the harm caused to Bramha's business.  (Brief in Opposition to Motion for Reconsideration at 6-7).